**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JONATHAN PAYTON, individually and of behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br><br><br>TARGET CORPORATION,<br><br>Defendant. | Civil Case Number:<br><br>**CIVIL ACTION**<br><br>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff JONATHAN PAYTON ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint (the "Complaint") against defendant TARGET CORPORATION ("Defendant" or "Target"), and alleges, upon personal knowledge as to her own conduct, and upon information and belief as to the conduct of others, as follows:

**INTRODUCTION**

1. Defendant engages in a class bait-and-switch deceptive marketing scheme aimed at consumers hoping to purchase an iPhone that is compatible with any phone carrier. Defendant lures consumers into purchasing an iPhone that is advertised as "*Unlocked*" when in reality the phone is *locked.* Because the iPhones are actually locked, the phone contains certain software and antennae that are tied to a specific carrier, like AT&T or Verizon, requiring consumers to pay an *additional fee* to unlock the phone for use with other carriers.

2. This action seeks to redress these deceptive practices of Defendant that have caused thousands of consumers to pay a premium and considerably more for their allegedly ***unlocked*** iPhones than they should otherwise have paid.

1

3. Because the monetary damages suffered by each customer are small compared to the much higher cost a single customer would incur in trying to challenge Defendant's unlawful practices, it makes no financial sense for an individual customer to bring his or her own lawsuit. Thus, only through a class action can Defendant's injured customers remedy this ongoing wrongdoing.

4. With this class action, Plaintiff seeks to put an end to Defendant's unfair business practices and hold them accountable for the damages it has caused to consumers —and continues to cause.

5. As such, Plaintiff brings this suit under New York General Business Law § 349, New York General Business Law §350 on behalf of a class of New York consumers as well as state law claims for consumers throughout the nation. Plaintiff seeks, *inter alia*, actual damages, refunds, treble damages, injunctive relief, attorneys' fees and the costs of this suit.

## **PARTIES**

6. Plaintiff is an individual and citizen of New York.

7. Upon information and belief, Defendant is, and at all times mentioned herein was, a foreign corporation with its principal place of business located in Minneapolis, Minnesota.

## **JURISDICTION AND VENUE**

8. Subject matter jurisdiction is authorized pursuant to 28 U.S.C. § 1332 (d), as minimal diversity exists, there are more than 100 class members and the amount in controversy is in excess of $5 million.

9. The Court has personal jurisdiction over Defendant because it conducts substantial business in this judicial district.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

## FACTUAL ALLEGATIONS

**Target Corporation**

11. Headquartered in Minnesota, Target is an American retail corporation that operates a chain of discount department stores.

12. Target is the seventh-largest retailer in the United States and a component of the S&P 500 Index.[1]

13. As of 2023, Target operates 1,948 stores throughout the United States.[2]

14. Target is also ranked No. 32 on the 2022 Fortune 500 list of the largest U.S. corporations by total revenue.[3]

**The iPhone**

15. Introduced in 2007, the iPhone is a line of smartphones developed and marketed by Apple that runs iOS, the company's own mobile operating system.

16. Since then, Apple has annually released new iPhone models and iOS versions.

17. Most recently, Apple has introduced the iPhone 16 and 16 Plus, and the higher-end iPhone 16 Pro and 16 Pro Max.

18. In addition to the apps that come pre-installed on iOS, there are nearly 2 million apps available for download from Apple's mobile distribution marketplace, the App Store, as of August 2024.

---

[1] See National Retail Federation Magazine, Top 100 Retailers 2022, https://nrf.com/blog/2022-top-100-retailers
[2] US SEC: Form 10-K Target Corporation". U.S. Securities and Exchange Commission. March 8, 2022.
[3] "Fortune 500: Target". Fortune. Archived from the original on December 30, 2022. Retrieved March 1, 2023.

19. As of January 1, 2024, more than 2.3 billion iPhones have been sold, making Apple the largest vendor of mobile phones in 2023.

20. Today, millions of people use an iPhone as their only computer as well as their only camera, GPS device, music player, communicator, trip planner and payment tool.

**Locked vs. Unlocked iPhones**

21. In basic terms, a locked phone is tied ("locked") to a specific wireless carrier, like AT&T or Verizon.

22. Locked phones have a software code on them that prevents the user from using other networks.

23. When a consumer purchases an iPhone from AT&T, T-Mobile, Verizon, or any other carrier, the iPhone is usually locked to work only on that carrier.

24. If the consumer intends to stick with that carrier for the foreseeable future, this does not pose a problem.

25. However, this would be problematic if a consumer is considering: (i) switching to another network carrier; (ii) planning to travel to another country; or (iii) moving somewhere where coverage could be better on another network.

26. In such scenarios, the consumer would want the freedom of having a phone that can work on any service carrier.

27. In addition, a **locked** iPhone purchased from a specific carrier usually only comes with the antennas that this specific carrier uses to transmit its signal.

28. Moreover, different carriers transmit different signals.

29. As such, even if a consumer attempts to unlock the iPhone herself, the iPhone will not work.

30. For example, assuming a consumer purchases a locked iPhone from a Verizon store, unlocks it herself, she still will be unable to use the iPhone on T-Mobile's network because Verizon uses different antennas than T-Mobile.

31. Because an **unlocked** iPhone will work on almost any carrier, consumers pay a premium for such a phone, i.e. they pay more for the capabilities of the *unlocked* iPhone than they would for a *locked* phone.

32. Consumers pay this extra cost as they want the freedom to change carriers or if they plan to use the phone while travelling internationally.

**Target's Advertisements**

33. Aware of this versatility and added value ascribed to an unlocked iPhone, Target prominently displays whether an iPhone for sale in its stores or online are "Unlocked."

34. For instance, Target is currently advertising on its website the "Apple iPhone 11 (64GB) **Unlocked** – Black."[4]

35. In the Questions below the product, Target addresses whether an "Unlocked" phone has the capability to operate on any carrier.

Q: Would this be able to connect to any service provider? Ex) T-Mobile

A: Hi aa, thanks for reaching out about Pre-Owned Apple iPhone 11 (64GB) Unlocked - Black. Yes, this phone is unlocked and should work on any carrier. If you have any additional questions, we welcome you to contact MyTGTtech at 833-848-8324 every day, between 7am-11pm CST.
Target expert support
Q: Can I use a prepaid phone plan with this phone?

A: Hi Belvin, thanks for reaching out about Pre-Owned Apple iPhone 11 (64GB) Unlocked - Black. Yes, this is an unlocked iPhone, and any carrier prepaid or monthly plans will work. If you have any additional questions, we welcome you to contact MyTGTtech at 833-848-8324 every day, between 7am-11pm CST.[5]

---

[4] https://www.target.com/p/apple-iphone-11-pre-owned-unlocked-64gb-black/-/A-88685129#lnk=sametab
[5] *Id*.

**Plaintiff's Factual Allegations**

36. During the busy shopping season of 2023, Plaintiff decided to purchase an unlocked iPhone.

37. Plaintiff viewed an advertisement on Target's website for an "Unlocked iPhone 11 Black" ("Phone").

38. Plaintiff checked the inventory of the Target store located at 10 Union Square East – Union Square, New York ("Target Store") and confirmed the Target Store had the Phone in stock.

39. Thereafter, Plaintiff called the Target Store and confirmed they had the Phone in stock.

40. On November 24, 2023, Plaintiff traveled to the Target Store to purchase the Phone.

41. Initially, Plaintiff was advised that the Target Store did not have the Phone in stock.

42. Thereafter, however, the Electronics Department manager found the Phone in the Target Store's inventory.

43. Before purchasing the Phone, Plaintiff asked the Target Store's employees whether the Phone: (1) was actually unlocked; and (2) could be used with any carrier.

44. The Target Store's employees answered yes to both questions.

45. In addition to these employees, the Target Store manager confirmed that the Phone was indeed unlocked and able to be used with any carrier.

46. As such, Plaintiff purchased the iPhone for $249.99.

47. After the purchase, Plaintiff endeavored to activate service with his wireless carrier, AT&T.

48. Plaintiff was shocked to learn that the Phone was **not actually unlocked**.

49. After Plaintiff described the inside packaging to contain indicia of Verizon, the AT&T employees advised Plaintiff to visit a Verizon store to unlock the Phone.

50. Plaintiff then traveled to a Verizon store and spoke with a Verizon representative.

51. If matters could not get more frustrating for Plaintiff, the Verizon store representative indicated that only a "Total By Verizon" store could unlock the iPhone.

52. Exasperated, the Plaintiff traveled to a Total by Verizon store to ultimately unlock the iPhone so he could actually use it with his AT&T carrier.

53. At the Total by Verizon store, the employees confirmed that the iPhone was locked.

54. Then, the Total by Verizon store employee explained that Plaintiff would have to make two minimum payments of fifty-four dollars ($54) to unlock the iPhone.

55. If Plaintiff had known that the Phone advertised as being unlocked was actually locked requiring the payment of these additional funds to ultimately unlock the Phone, he would not have paid a premium for the allegedly unlocked Phone.

56. If Plaintiff had known that the Phone advertised as being unlocked was actually locked requiring the payment of additional funds to ultimately unlock the Phone, he would not have purchased the allegedly unlocked Phone.

57. Plaintiff intends to continue to use an iPhone and may purchase products and goods from Defendant in furtherance of the same, as long as he can gain confidence in Target's advertisements and representations about its goods and services.

## CLASS ACTION ALLEGATIONS

58. Plaintiff brings this action pursuant to Rule 23(a), Rule 23(b)(2), and Rule 23(b)(3) of the Federal Rules of Civil Procedure individually and on behalf of the Class, which include:

> Nationwide Class
> All citizens who purchased an iPhone advertised as Unlocked from a Target store from November 2016 through the date of class certification.

<u>New York Subclass</u>

All New York citizens who purchased an iPhone advertised as Unlocked from a Target store from October 2016 through the date of class certification.

59. Plaintiff reserves the right to modify the Class definition as warranted as facts are learned in further investigation and discovery.

60. Excluded from the Class are: (1) Defendant, any entity or division in which Defendant has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) governmental entities. Plaintiff reserves the right to amend the Class definitions if discovery and further investigation reveal that the Class should be expanded, divided into subclasses, or modified in any other way.

61. As used herein, the term "Class Members" shall mean and refer to the members of the Classes described above.

62. **Numerosity**: Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court. The Class Members are readily identifiable from information and records in Defendant's possession, custody, or control, as well as from records kept by various third party credit card providers. Plaintiff believes, and on that basis allege, that thousands of phones have been sold across the country that are the subject of the Classes.

63. **Typicality**: The claims of the representative Plaintiff is typical of the claims of the Classes in that the representative Plaintiff, like all Class Members, purchased goods sold by Defendant. The representative Plaintiff, like all Class Members, has been damaged by Defendant's

8

misconduct. Furthermore, the factual bases of Defendant's misconduct are common to all Class Members.

64. Plaintiffs reserve the right to amend the Class, and to add additional subclasses, if discovery and further investigation reveals such action is warranted.

65. No violations alleged in this complaint are contingent on any individualized interaction of any kind between Class Members and Defendants

66. **Commonality**: There are common questions of law and fact as to the Class Members that predominate over questions affecting only individual members, including but not limited to:

   a. Whether Defendant engaged in unlawful, unfair, or deceptive business practices in the sale of the phones to Plaintiff and other Class Members;

   b. Whether Defendant engaged in consumer-oriented conduct in its advertisements of the phones;

   c. Whether Defendant's conduct was materially misleading;

   d. Whether Plaintiffs and Class Members are entitled to equitable and/or injunctive relief;

   e. Whether Defendants' unlawful, unfair, and/or deceptive practices harmed Plaintiffs and Class Members; and

   f. The method of calculation and extent of damages for Plaintiffs and Class Members.

67. **Typicality**: The claims of Plaintiffs are typical of all class members. All claims of Plaintiff and the class are based on the exact same legal theories. Plaintiff has no interest antagonistic to, or in conflict with, the class. Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class Member, because Plaintiff bought the allegedly unlocked phone from Defendant during the Class Period.

68. Defendant's unlawful, unfair and/or fraudulent actions concerns the same business practices described herein irrespective of where they occurred or were experienced. Plaintiff's claims are typical of all Class Members as demonstrated herein.

69. **Adequate Representation**: Plaintiff will fairly and adequately protect the interests of the class members. Plaintiff has retained attorneys experienced in the prosecution of class actions, including consumer class actions, and Plaintiff intends to prosecute this action vigorously.

70. Plaintiffs will thoroughly and adequately protect the interests of the class, having retained qualified and competent legal counsel to represent herself and the class. Common questions will predominate, and there will be no unusual manageability issues.

71. **Predominance and Superiority**: Plaintiff and the Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendants' misconduct.

72. Absent a class action, Defendant's misconduct will go without a remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

## FIRST CAUSE OF ACTION
### (VIOLATION OF THE N.Y. GEN. BUS. LAW 349)

73. Plaintiff re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

74. The New York General Business law provides, *inter alia*:

> Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful.

N.Y. Gen. Bus. Law §349.

75. Defendant's misrepresentations and false, deceptive and misleading statements with respect to the characteristics of the iPhones it sells as alleged with specificity herein, constitute deceptive acts or practices in the conduct of business, trade or commerce in violation of the New York General Business Law.

76. Each of the deceptive acts and practices alleged with specificity herein was committed in the conduct of business, trade, commerce or the furnishing of a service in this state and constituted a violation of GBL §349 independent of whether it also constituted a violation of any other law.

77. Each of these actions alleged with specificity herein was consumer oriented and involves misleading conduct that is recurring and has a broad impact upon the public.

78. The deceptive practices alleged with specificity herein are recurring practices that Defendant has taken, not just against Plaintiff, but against large numbers of consumers as part of a policy and practice that is designed and has the effect of charging a premium for a phone represented to have certain desirable characteristics that it does not actually possess or feature.

79. Each of Defendant's deceptive acts, by their nature, involves a material misrepresentation.

80. Plaintiff and the other members of the Class suffered an ascertainable loss as a direct and proximate result of Defendant's actions in violation of New York General Business Law.

81. As a consequence, Plaintiff and the other members of the Class suffered an ascertainable loss based on the difference in the value of a locked iPhone and unlocked iPhone.

82. Plaintiff and other members of the Class suffered an ascertainable loss caused by Defendant's misrepresentations and omissions because they would not have purchased the locked phones if the true facts concerning such phones' capabilities had been known.

83. As a result of these violations, Plaintiff has suffered pecuniary and non-pecuniary harm, and is therefore entitled to actual damages of fifty dollars ($50), whichever is greater, punitive damages, injunctive relief, attorneys' fees and costs of this suit

## SECOND CAUSE OF ACTION
### (Violation of N.Y. General Business law 350

84. Plaintiff re-alleges and incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

85. NYGBL § 350 prohibits false advertising in the conduct of any business, trade, or commerce, or in the furnishing of any service in the State of New York.

86. By reason of the conduct alleged herein, Defendant engaged in material and misleading labeling and advertising of its Waterproof Mascara Products by statements and omission within the meaning of the NYGBL § 350. The false advertising occurred in part within New York State.

87. Defendant misrepresented the capabilities of the phones.

88. Plaintiff and Class members would not have purchased the phones at issue had they known the truth about its capabilities.

89. Defendant violated the NYGBL § 350 by marketing, and selling "unlocked" iPhones and failing to properly represent, both by affirmative conduct and by omission, the actual capabilities of the phones.

90. Defendant's advertisements and labels for its phones violate NYGBL § 350 in that, among others things, Defendant actively and knowingly misrepresented or omitted disclosure of material information, including the fact that the phones were actually locked, knowing that

12

Plaintiffs and Class members would see and rely on the online and in-store advertisements at the time they purchased the phones.

91. The conduct alleged herein constitutes an unconscionable business practice in that Defendant has, by the use of false statements and/or material omissions in its labels and advertisements, failed to properly represent and/or concealed the phones actually capabilities.

92. Members of the public, including Plaintiff and Class members, were deceived by and relied upon Defendant's affirmative misrepresentations and failures to disclose.

93. Such material and misleading advertisements and labels designed and disseminated by Defendant are and were likely to mislead a reasonable consumer purchasing the products.

94. The sales of Defendant's phones in New York, through such means occurring in New York, were consumer-oriented acts and thereby fall under the New York consumer protection statute, NYGBL § 350.

95. To this day, Defendant continues to engage in unlawful misleading advertising in violation of the NYGBL § 350. Defendant continues to conceal the defective nature of the products.

96. As a direct and proximate cause of Defendant's conduct, Plaintiff and Class members suffered actual damages as alleged above.

97. In addition, Plaintiff and the Class members seek statutory and treble damages for each injury and violation which has occurred.

98. Plaintiff also seeks injunctive relief for Defendant to refrain from the continued advertising of that omits and misrepresents material facts, including the actual capabilities of the phones.

99.

100. Plaintiff further seeks injunctive relief forcing Defendant to replace all locked phones with unlocked phones for the Class Members.

### THIRD CAUSE OF ACTION
### (Breach of Contract)

101. Plaintiff re-alleges and incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

102. Plaintiff and the Class entered into valid contracts with Target for the purchase of an Unlocked iPhone.

103. Under the agreement, Target promised to sell an iPhone that was unlocked and thus, it was capable of being used with any carrier.

104. Pursuant to the agreement, Plaintiff and the Class agreed to pay the cost of an unlocked iPhone, and they did so.

105. However, Target failed to perform its obligations under the contract because it sold the Plaintiff and the Class a locked iPhone.

106. The characteristic of being unlocked as a material term of the contract.

107. Plaintiff and the Class were damaged as a result of paying for a locked iPhone.

108. By reason of the foregoing, Defendant is liable to Plaintiff and the other members of the Class for the damages that they have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus attorneys' fees.

### FOURTH CAUSE OF ACTION
### (Breach of Covenant of Good Faith and Fair Dealing)

109. Plaintiff re-alleges and incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

110. Plaintiff and members of the Classes contracted with Target for the purchase of an unlocked iPhone.

111. As alleged with specificity herein, Target breached the terms of its contract with consumers by selling iPhones that were actually locked.

112. Further, under the law of each of the states where Target does business, an implied covenant of good faith and fair dealing governs every contract.

113. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit-not merely the letter-of the bargain.

114. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

115. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

116. A lack of good faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Other examples of violations of good faith and fair dealing are willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

117. As alleged with specificity herein, Defendant breached the covenant of good faith and fair dealing when they sold the iPhones advertised as being unlocked.

118. Each of Defendant's actions was done in bad faith and was arbitrary and capricious.

119. Plaintiff and members of the Classes have performed all of the obligations imposed on them under the contract.

120. Plaintiff and members of the Classes have sustained monetary damages as a result of Target's breaches of the contract and covenant of good faith and fair dealing.

## FIFTH CAUSE OF ACTION
### (Unjust Enrichment)

121. Plaintiff re-alleges and incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein. Plaintiff specifically excludes those allegations that relate to the his breach of contract claim. This claim is plead in the alternative.

122. By engaging in the conduct alleged with specificity herein, Defendant has unjustly enriched itself and received a benefit at the expense of Plaintiff and the other members of the Classes. Defendant appreciated the benefit and it would be inequitable for Defendant to retain such benefit without being required to compensate Plaintiff and other members of the Classes for the damages that they suffered as a result of Defendant's actions.

123. It would be unjust and inequitable for Defendant to retain the payments Plaintiff and the Classes made for the phones.

124. By reason of the foregoing, Defendant is liable to Plaintiff and the other members of the Classes for the damages they have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on Plaintiff's own behalf and on behalf of the Class members, respectfully prays for the following relief and judgment against Defendants:

a. Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class representative and Ross H. Schmierer, Esq., Todd Friedman and Adrian Bacon as Class Counsel;

b. Awarding Plaintiff and the Class statutory damages;

c. Awarding Plaintiff and the Class actual damages;

d. Awarding Plaintiff and the Class punitive damages;

e.  Awarding Plaintiff costs of this Action, including reasonable attorneys' fees and expenses;

f.  Awarding pre-judgment interest and post-judgment interest; and

g.  Awarding Plaintiff and the Class such other and further relief as this Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
       November 21, 2024

**KAZEROUNI LAW GROUP, A.P.C.**

By: _____
Ross H. Schmierer, Esq.
48 Wall Street, Suite 1100
New York, NY 10005
Phone: (800) 400-6808
Fax: (800) 520-5523
ross@kazlg.com

**LAW OFFICES OF TODD M. FRIEDMAN, PC**
Todd M. Friedman, Esq.
(*Pro hac Vice Application Forthcoming*)
Adrian Bacon, Esq.
(*Pro hac Vice Application Forthcoming*)
21550 Oxnard St., Suite 780
Woodland Hills, CA 91367
tfriedman@toddflaw.com
*Attorneys for Plaintiff*